UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHARLIE JULIUS GONZALES, | § | |
| TDCJ No. 1194735, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL NO. SA-08-CA-456-NSN |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

MEMORANDUM OPINION AND ORDER

Petitioner Charlie J. Gonzales filed this federal habeas corpus action pursuant to Title 28 U.S.C. Section 2254 seeking to collaterally attack his September, 2003, McLennan County criminal conviction for aggravated assault. For the reasons set forth below, petitioner's request for federal habeas corpus relief is denied in all respects but petitioner is granted a Certificate of Appealability on specific claims listed hereinafter.

I. **Background**

Initial Indictment

March 13, 2002, a McLennan County grand jury indicted petitioner in cause no. 2002-274C on two counts of aggravated sexual assault and two counts of aggravated assault.[1]

---

[1] Transcript of pleadings, motions, and other documents filed in petitioner's state trial court proceeding (henceforth "Trial Transcript"), at pp. 5-6.
Count 1 of the indictment in cause 2002-274C alleged that,

First Trial Mistrial

At a trial conducted in June, 2003, the jury was unable to reach a verdict and the state trial court declared a mistrial.[2]

Second Indictment

On June 25, 2003, a McLennan County grand jury indicted petitioner in cause no. 2003-CR-689-C on two additional counts of aggravated assault.[3]

Second Trial

At the conclusion of the guilt-innocence phase of a second trial held in September, 2003, the jury acquitted petitioner on

_____

on or about August 26, 2001, petitioner intentionally and knowingly caused the penetration of the anus of Jessica Mitchell by petitioner's sexual organ by compelling Mitchell to submit thereto by threatening to use force or violence, Mitchell believed petitioner had the present ability to execute that threat and petitioner used and exhibits a deadly weapon, i.e., a knife, in the course of the same criminal episode.

Count 2 charged petitioner in a similar manner with having intentionally and knowingly caused the penetration of Mitchell's mouth by petitioner's sexual organ under threat of physical force and through the use and exhibition of a knife.

Count 3 charged petitioner with having intentionally, knowingly, or recklessly caused bodily injury to Mitchell by cutting her in the back with a knife.

Count 4 charged petitioner with threatening Mitchell with imminent bodily injury and using or exhibiting a deadly weapon, i.e., a knife.

[2] Trial Transcript, at p. 180.

[3] Trial Transcript, at pp. 237-38.

Count 1 charged petitioner with intentionally, knowingly, or recklessly causing bodily injury to Jessica Mitchell on or about August 26, 2001 by striking Mitchell with his hand or elbows.

Count 2 charged petitioner with causing in a similar manner bodily injury to Mitchell by striking and strangling her with his hand and using or exhibiting a deadly weapon, i.e., his hand.

the two aggravated sexual assault charges from cause no. 2002-274C but found petitioner guilty on a general verdict form of aggravated assault.[4]  At the conclusion of the punishment phase of the petitioner's trial, on September 26, 2003, the same jury imposed a sentence of twenty years imprisonment, a ten thousand dollar fine, and expressly found beyond a reasonable doubt that the petitioner had used or exhibited a deadly weapon in the course of his offense.[5]

The state trial court entered identical Judgments in each state cause which declared petitioner "guilty of aggravated assault as charged under indictment in cause nos. 2002-274-C & 2003-689-C" but which failed to specify the specific Counts in each of those indictments on which the petitioner had been convicted.[6]

---

[4] S.F. Trial, Volume 5, at pp. 59-60; Trial Transcript, at pp. 209-12.
Counsel for neither party raised any objections on the record to the general verdict form (found on page 211 of the Trial Transcript) employed by the state trial court in connection with the four aggravated assault charges in the separate indictments against petitioner.  As best this Court can tell from the record now before it, apparently, the state trial court was under the impression that, under Texas law, the four aggravated assault Counts in question constituted four, alternative, factual theories underlying a single criminal offense, rather than four, separate and distinct, criminal offenses, as the Texas appellate court subsequently determined to have been the case.

[5] Trial Transcript, at pp. 226-29.

[6] The Judgment in cause 2002-274-C appears at Trial Transcript, at pp. 231-34.  The Judgment in cause 2003-689-C appears at pages 57-59.  Petitioner's counsel raised no timely

<u>Direct Appeal</u>

In his original appellant's brief, petitioner argued (1) the state trial court erred in failing to hold a hearing on petitioner's motion for new trial, (2) his trial counsel was ineffective for failing to object to the guilt-innocence phase jury charge, (3) there was fundamental error in the guilt-innocence phase jury charge in that it permitted petitioner's conviction without unanimity as to guilt regarding a specific charge of aggravated assault, (4) there was legally insufficient evidence to support the jury's guilty verdict, and (5) there was factually insufficient evidence to support the jury's guilty verdict.

In an unpublished opinion issued February 23, 2005, the Texas Tenth Court of Appeals rejected petitioner's legally insufficient evidence point of error, granted relief on petitioner's first point of error, and remanded, directing the state trial court to hold an evidentiary hearing on petitioner's motion for new trial. *Gonzales v. State*, 2005 WL 428463 (Tex. App. – Waco February 23, 2005).

On March 18, 2005, the state trial court held an evidentiary hearing on petitioner's motion for new trial and heard testimony

---

objection to the absence of a specification in either Judgment of precisely which aggravated assault Count was the basis for the petitioner's conviction and sentence.

4

from both petitioner and his former trial counsel.[7]  There was no dispute during that hearing over the fact that neither party had objected to the general verdict form employed by the state trial court at the guilt-innocence phase of trial.[8]  On April 28, 2005, the state trial court overruled petitioner's motion for new trial.[9]

On July 12, 2005, petitioner filed a second appellant's brief in which he argued (1) the state trial court erred in submitting a jury instruction at the guilt-innocence phase of trial that allowed conviction on the charge of aggravated assault without unanimity on a particular count, (2) there was legally insufficient evidence to support the jury's guilty verdict on Count 3 of cause 2002-274-C, and (3) there was factually insufficient evidence to support the jury's guilty verdict because the evidence did not support a finding the petitioner had used a deadly weapon or caused serious bodily injury.  In an opinion issued April 5, 2005, the Texas Tenth Court of Appeals (1) rejected on the merits all of the petitioner's challenges to the evidentiary sufficiency underlying his conviction, finding

---

[7] Supplemental Record Motion for New Trial (henceforth "S.F. Motion for New Trial Hearing").

[8] S.F. Motion for New Trial Hearing, testimony of Charlie Gonzales, at p. 5; testimony of John Hand, at pp. 9-10.

[9]  The Order overruling petitioner's motion for new trial appears among the state court records in this cause at page 24 of the Second Supplemental Clerk's Record.

ample evidence in the trial record establishing the petitioner both (a) used a knife to cut Mitchell and (b) beat Mitchell about the face so severely Mitchell suffered a right orbital blow-out fracture (i.e., a fractured eye socket), multiple facial bruises, lacerations, a concussion, and loss of consciousness, (2) concluded the two indictments charged petitioner with four separate and distinct criminal offenses, (3) determined the state trial court incorrectly submitted one general verdict form on four separately charged acts of aggravated assault, without a unanimity instruction requiring all twelve jurors to find him guilty of the same criminal act, (4) nonetheless concluded this error did not rise to the level of "egregious harm" necessary for reversal when no timely objection was raised, but (5) *sua sponte* modified the Judgment against petitioner by vacating the conviction in cause 2003-689-C and entering Judgment solely on Count 3 in cause 2002-274-C. *Gonzales v. State*, 191 S.W.3d 741, 746-55 (Tex. App. - Waco 2006, *PDR ref'd*). On December 6, 2006, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. Petitioner did not thereafter seek further review of his conviction or sentence via certiorari from the United States Supreme Court.

State Habeas Corpus Proceeding

On August 10, 2007, petitioner filed a pro se application for state habeas corpus relief asserting thirteen claims for relief.[10]

In an Order issued September 5, 2007, the state trial court issued its findings of fact, conclusions of law, and

---

[10] Transcript of pleadings, motions, and other documents filed in petitioner's state habeas corpus proceeding (henceforth "State Habeas Transcript"), at pp. 6-24.

More specifically, petitioner argued (1) the state trial court erroneously submitted one verdict form for all four aggravated assault charges, (2) the jury instructions did not require jury unanimity on a single Count or charge of aggravated assault, (3) the state trial court committed fundamental error in its guilt-innocence phase jury instructions and verdict form, (4) the prosecution improperly informed the jury during voir dire and in its closing argument that its verdict did not have to be unanimous and petitioner was dangerous, (5) petitioner's trial counsel rendered ineffective assistance by failing to object to the guilt-innocence phase jury verdict form and the lack of unanimity instruction therein, (6) there was insufficient evidence showing petitioner used or exhibited a knife during his offense, (7) the complainant gave perjured testimony at trial, (8) the state appellate court erroneously applied the egregious harm standard in evaluating petitioner's complaints regarding his guilt-innocence phase jury instruction and verdict form, (9) the Texas intermediate appellate courts vary in how they apply the egregious harm standard, (10) petitioner received delayed notice of the denial of his PDR petition, (11) his appellate counsel rendered ineffective assistance in failing to raise an insufficient evidence point in petitioner's PDR petition, (12) petitioner's twenty-year sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment, and (13) the Tenth Court of Appeals erroneously substituted its judgment for the jury when it chose to modify petitioner's Judgment by selecting a Count with a deadly weapon finding as the count on which to sustain petitioner's conviction.

recommendation that petitioner's state habeas corpus application be denied.[11]

On November 21, 2007, the Texas Court of Criminal Appeals remanded the petitioner's state habeas action for an evidentiary hearing on petitioner's ineffective assistance claim. *Ex parte Charlie Gonzales*, App. 68,394-01 (Tex. Crim. App. November 21, 2007).

In an Order issued February 11, 2008, the state trial court relied upon the record before it, including an affidavit from petitioner's former state trial counsel, and concluded (1) the petitioner's trial counsel did not render deficient performance because, at the time of petitioner's trial, the law in Texas was unclear as to whether aggravated assault was "a result oriented offense" and (2) therefore, the failure of petitioner's trial counsel to object to the guilt-innocence phase jury instructions and verdict form was not objectively unreasonable.[12]

---

[11] State Habeas Transcript, at pp. 65-67.

The state trial court concluded (1) petitioner's first through fourth, sixth through seventh, and twelfth through thirteenth claims for state habeas relief were or could have been raised on direct appeal and, therefore, were not properly before the state habeas court and (2) petitioner's eighth through eleventh claims were rejected in the course of petitioner's PDR process or could have been raised during that proceeding.

[12] Supplemental State Habeas Transcript, at pp. 16-19.

The state trial court noted that, while several Texas appellate court opinions subsequent to the date of petitioner's trial had reached a conclusion on this same legal issue contrary to the authorities relied upon by petitioner's trial counsel, the actions of petitioner's trial counsel were nonetheless

In an unpublished Order issued March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application based on the trial court's findings made without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

Proceedings in this Court

On June 5, 2008, petitioner filed a federal habeas corpus petition in this Court asserting a wide array of claims for relief which, by and large, mirrored the claims he had raised in his state habeas corpus application. *Docket entry no. 1.*

On August 13, 2008, respondent filed his answer, arguing in part there is no clearly established federal constitutional right to jury unanimity in state criminal cases. *Docket entry no. 11.*

On September 19, 2008, petitioner filed his reply brief arguing, in part, the state trial court abused its discretion in submitting a general verdict form without a unanimity instruction. *Docket entry no. 14.*

## II. **AEDPA Standard of Review**

Because petitioner filed his federal habeas corpus action after the effective date of the AEDPA, this Court's review of petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct.

---

objectively reasonable under state law as it existed at the time of petitioner's trial in 2003.

1910, 1918, 150 L.Ed.2d 9 (2001).  Under the AEDPA standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1438, 161 l.Ed.2d 334 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).  Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown v. Payton*, 544 U.S. at 141, 125 S.Ct. at 1438; *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003)("A state court's

10

decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'").  A state court's failure to cite governing Supreme Court authority does not, *per se*, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. at 16, 124 S.Ct. at 10.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown v. Payton*, 544 U.S. at 141, 125 S.Ct. at 1439; *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35, 156 L.Ed.2d 471 (2003).  A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. at 520-21, 123 S.Ct. at 2535.  The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is

different from a merely "incorrect" one. *Schriro v. Landrigan*,
550 U.S. 465, 473, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836
(2007)("The question under the AEDPA is not whether a federal
court believes the state court's determination was incorrect but
whether that determination was unreasonable - a substantially
higher threshold."); *Wiggins v. Smith*, 539 U.S. at 520, 123 S.Ct.
at 2535; *Price v. Vincent*, 538 U.S. 634, 641, 123 S.Ct. 1848,
1853, 155 L.Ed.2d 877 (2003)("it is the habeas applicant's burden
to show that the state court applied that case to the facts of
his case in an objectively unreasonable manner").

Legal principles are "clearly established" for purposes of
AEDPA review when the holdings, as opposed to the dicta, of
Supreme Court decisions as of the time of the relevant state-
court decision establish those principles. *Yarborough v.
Alvarado*, 541 U.S. 652, 660-61, 124 S.Ct. 2140, 2147, 158 L.Ed.2d
938 (2004)("We look for 'the governing legal principle or
principles set forth by the Supreme Court at the time the state
court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63,
71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003).

The AEDPA also significantly restricts the scope of federal
habeas review of state court fact findings.  A petitioner
challenging state court factual findings must establish by clear
and convincing evidence that the state court's findings were
erroneous. *Schriro v. Landrigan*, 550 U.S. at 473-74, 127 S.Ct. at

12

1939-40 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice v. Collins*, 546 U.S. 333, 338-39, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006)("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke*. 545 U.S. 231, 240, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005)("we presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1).

However, the deference to which state-court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review. *See Miller-El v. Dretke*, 545 U.S. at 240, 125 S.Ct. at 2325 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003)("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief.").

Finally, in this Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of

the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision. *See St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006)(holding Section 2254(d) permits a federal habeas court to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 550 U.S. 921 (2007); *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006)(holding the same), *cert. denied*, 550 U.S. 920 (2007); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003)(holding the precise question before a federal habeas court in reviewing a state court's rejection on the merits of an ineffective assistance claim is whether the state court's ultimate conclusion was objectively reasonable), *cert. denied*, 541 U.S. 1045 (2004); *Anderson v. Johnson*, 338 F.3d 382, 390 (5th Cir. 2003)(holding a federal habeas court reviews only a state court's decision and not the opinion explaining that decision); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002)(*en banc*)(holding a federal court is authorized by §2254(d) to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 537 U.S. 1104 (2003).

### III. <u>Erroneous Jury Instructions & Verdict Form</u>

A.   <u>The Claims</u>

In his first three claims herein, petitioner argues (1) the state trial court erred in "convincing" counsel for both parties

14

that separate verdict forms for each Count were unnecessary, (2) his guilt-innocence phase jury charge did not require the jury to unanimously agree on petitioner's commission of a particular act of aggravated assault, and (3) his guilt-innocence phase jury charge was, therefore, unconstitutional.

B.   State Court Disposition

On direct appeal, the intermediate Texas appellate court concluded it was error for the state trial court to have submitted the four separate Counts of aggravated assault as if they were four different factual theories underlying a single criminal offense but held, nonetheless, that petitioner had failed to establish he sustained "egregious harm" as a result of this "unpreserved" complaint about his jury charge because (1) the prosecution had not actively misled petitioner's jury regarding its responsibility to render a unanimous verdict, (2) none of the four criminal acts with which petitioner was charged were mutually exclusive, and (3) the evidence was uncontested that Jessica Mitchell actually sustained severe bleeding and bruising about her eyes, an orbital blow-out fracture to her right eye, a bloody nose, scratches and bruising on her throat, and a cut on her shoulder blade that required sutures on the night of the assaults. *Gonzales v. State*. 191 S.W.3d at 746-51. The state appellate court pointed out the central factual issue before petitioner's jury at the guilt-innocence phase of trial

15

was whether those injuries were inflicted by petitioner, as Mitchell had testified, or were self-inflicted, as petitioner suggested.[13] *Id.*, 191 S.W.3d at 751.  Under such circumstances, the state appellate court concluded, the error in petitioner's guilt-innocence phase jury charge did not rise to the level of "egregious harm" necessary to justify reversal based on "unpreserved" error. *Id.*

When petitioner attempted to re-litigate his complaints about his erroneous guilt-innocence phase jury instructions as his first four grounds for relief in petitioner's state habeas corpus application, the state trial court recommended summary dismissal of those complaints on the ground petitioner had already presented the same complaints in the course of his direct appeal. *State Habeas Transcript, at p. 66.*  In an unpublished Order issued March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application based on the

--------

[13] Petitioner did not testify he had personally observed Mitchell inflict any of the injuries upon herself.  Nor did petitioner testify he personally witnessed anyone else inflict the injuries in question.  Instead, petitioner claimed he had intercourse with Mitchell on the night in question and then, following an argument, he left Mitchell alone at his residence for the rest of the night while he went out with friends and did not observe any injuries to Mitchell prior to his departure from his residence. S.F. Trial, Volume 4, at pp. 249-56.
Mitchell denied inflicting any of her injuries upon herself on the date in question and testified petitioner assaulted her many times during their relationship but that she was afraid to fight back for fear of further angering him. S.F. Trial, Volume 4, testimony of Jessica Mitchell, at pp. 226, 228, 239, 243.

trial court's findings made without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

C.   AEDPA Review

1.   Clearly Established Federal Law

Insofar as petitioner complains the Texas appellate courts erroneously applied state-law principles in rejecting his complaints about his guilt-innocence phase jury charge, his arguments do not furnish a basis for federal habeas relief. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)(holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)(recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984)(holding a federal court may not issue the writ on the basis of a perceived error of state law).

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does *not* sit as a super-state appellate court. *Estelle v. McGuire*, 502 U.S. at

17

67-68, 112 S.Ct. at 480; *Lewis v. Jeffers*, 497 U.S. at 780, 110

S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at

874.

> When a federal district court reviews a state
> prisoner's habeas petition pursuant to 28 U.S.C. § 2254
> it must decide whether the petitioner is "in custody in
> violation of the Constitution or laws or treaties of
> the United States."  The court does not review a
> judgment, but the lawfulness of the petitioner's
> custody *simpliciter*.

*Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115
L.Ed.2d 640 (1991).

Improper jury instructions in state criminal trial do not

generally form the basis for federal habeas relief. *Estelle v.*

*McGuire*, 502 U.S. 62, 71-72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385

(1991); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002).

"It is the rare case in which an improper instruction will

justify reversal of a criminal conviction when no objection has

been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145,

154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *Mayabb v.*

*Johnson*, 168 F.3d 863, 867 (5th Cir. 1999).  The fact that a jury

instruction was incorrect under state law is not a basis for

federal habeas relief. *Gilmore v. Taylor*, 508 U.S. 333, 342, 113

S.Ct. 2112, 2117, 124 L.Ed.2d 306 (1993); *Estelle v. McGuire*, 502

U.S. 62, 71, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Marshall*

*v. Lonberger*, 459 U.S. 422, 438 n.6, 103 S.Ct. 843, 853 n.6, 74

L.Ed.2d 646 (1988).  Rather, the question is whether the

allegedly ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. at 72, 112 S.Ct. at 482; *Henderson v. Kibbe*, 431 U.S. at 154, 97 S.Ct. at 1737; *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973); *Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999)("as a federal habeas court, our question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.").  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of law." *Henderson v. Kibbe*, 431 U.S. at 155, 97 S.Ct. at 1737.  The relevant inquiry is whether the failure to give an instruction by itself so infected the entire trial that the resulting conviction violates due process. *Cupp v. Naughten*, 414 U.S. at 147, 94 S.Ct. at 400-01; *Galvan v. Cockrell*, 293 F.3d at 764-65.  A federal court may reverse a state court criminal conviction based upon erroneous jury instructions only when the instructions in question render the entire trial fundamentally unfair. *Henderson v. Kibbe*, 431 U.S. at 154, 97 S.Ct. at 1736; *Cupp v. Naughten*, 414 U.S. at 147, 94 S.Ct. at 400-01; *Mayabb v. Johnson*, 168 F.3d at 867.  Moreover, there is a strong presumption that errors in jury instructions

are subject to harmless error analysis. *Galvan v. Cockrell*, 293 F.3d at 765.

2.   <u>Synthesis</u>

In the course of petitioner's state habeas corpus proceeding, the state habeas trial court reviewed applicable state law and determined (1) at the time of petitioner's trial, state case law existed which appeared to justify submission of a general verdict form in criminal cases such as petitioner's and (2) this issue was not finally resolved until almost three years after petitioner's 2003 jury trial by a 2006 Austin Court of Criminal Appeals ruling rejecting general verdict forms in aggravated assault cases such as petitioner's.[14]  The state habeas court's interpretation of applicable state law in this manner is binding on this Court in the context of this federal habeas corpus proceeding. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 604, 163 L.Ed.2d 407 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Amador v. Quarterman*, 458 F.3d at 412 (holding a federal habeas court must defer to a state court's interpretation of state law); *Fuhrman v. Dretke*, 442 F.3d 893, 901 (5th Cir. 2006)(holding the same); *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004)("In our

---

[14] *Supplemental State Habeas Transcript, at pp. 17-18.*

role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law."); *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000)(holding a federal habeas court may not review a state court's interpretation of its own law); *Gibbs v. Johnson*, 154 F.3d 253, 259 (5th Cir. 1998)(holding the same), *cert. denied*, 526 U.S. 1089 (1999).

In the course of petitioner's direct appeal, the state appellate court held petitioner's complaint about his guilt-innocence phase jury charge did not rise to the level of "egregious harm." 191 S.W.3d at 751.

This Court concludes the error contained in petitioner's guilt-innocence phase jury charge and verdict form, which failed to instruct petitioner's jury to return a separate verdict on each of the four aggravated assault offenses with which petitioner was charged, did not render petitioner's entire trial fundamentally unfair.  None of the aggravated assault charges against petitioner were mutually exclusive.  Petitioner was alleged to have committed four separate and distinct aggravated assaults committed upon Mitchell in the course of the same criminal transaction.  More specifically, petitioner was charged with stabbing Mitchell, threatening her with a knife, beating and strangling her with his hands and elbows, and causing serious bodily injury to her with his hands and elbows.

21

When viewed in the light most favorable to the jury's verdict, the evidence introduced at trial fully supported the prosecution's theories on all four offenses.  It was undisputed Mitchell sustained a knife wound to her left shoulder which required sutures.[15]  The emergency room physician who treated Mitchell testified Mitchell's shoulder wound was likely caused by a knife fully capable of inflicting serious bodily injury.[16]  It was likewise clear Mitchell sustained a concussion, numerous facial bruises, scratches to her neck, and an orbital fracture to her right eye.[17]  Dr. Norwid also testified (1) Mitchell's facial injuries resulted from the application of a "fair amount of force," similar to the types of force one would likely sustain in an automobile accident or an assault, (2) in his opinion, it was unlikely her facial injuries were self-inflicted, (3) Mitchell's facial injuries were painful and potentially dangerous, (4) Mitchell sustained serious head injuries, which included loss of consciousness, bi-lateral sub-conjunctival hemorrhages, swelling and bruising of both eyelids, and bleeding into her sinus cavity from her facial fracture which necessitated a CAT scan to rule out bleeding in her brain, (5) her injuries could have resulted

---

[15] S.F. Trial, Volume 4, testimony of Mark Norwid, at pp. 72-74.

[16] *Id.*, at pp. 72-73.

[17] *Id.*, at pp. 74-86.

22

from blows by hands or elbows, (6) the angle and location of Mitchell's shoulder wound made it unlikely her stab wound was self-inflicted, and (7) Mitchell's injuries were serious enough to have caused protracted loss of the use of her body and a substantial risk of death.[18]  Petitioner offered no expert medical testimony controverting Dr. Norwid's conclusions and opinions.

Petitioner does not identify any error in his guilt-innocence phase jury instructions regarding the definitions of the terms used to explain the legal requirements for the offense of aggravated assault.  Nor does petitioner allege his guilt-innocence jury charge mis-informed his jury regarding the essential elements of the offense of aggravated assault, as defined by state law.

The prosecution's closing argument at the guilt-innocence phase of trial began with an argument that (1) the petitioner had been charged with "one aggravated assault," (2) the jury instructions listed "different manners and means" of committing that single offense, and (3) the question before the jury was to decide if the petitioner were guilty of "aggravated assault."[19] The prosecutor briefly urged the jury to consider the criminal acts alleged against petitioner as different means of committing

---

[18]  *Id.*

[19]  S.F. Trial, Volume 5, at pp. 31-32.

23

the same offense.[20]  The prosecutor then quickly shifted her to focus on discrediting petitioner's alibi witnesses, bolstering the credibility of Jessica Mitchell, and emphasizing the seriousness of Mitchell's injuries.[21]  The prosecution concluded with an attack on the petitioner's credibility, again emphasized the extent of  Mitchell's injuries, and urged the jury to accept Mitchell's version of the relevant events over petitioner's.[22] At no point did the prosecution directly encourage petitioner's jury to render a less than unanimous verdict or to pick and choose between particular parts of the different theories of aggravated assault contained in the trial court's instructions in determining whether petitioner was guilty of aggravated assault.

Under these circumstances, submission of the general verdict form (asking whether petitioner was guilty of "aggravated assault") and guilt-innocence phase jury charge employed at petitioner's trial did not render petitioner's entire trial fundamentally unfair.

Having independently reviewed the record from petitioner's trial, this Court also concludes any error in petitioner's guilt-innocence phase jury charge and verdict form was harmless under the applicable federal standard. *See Brecht v. Abrahamson*, 507

---

[20] *Id.*

[21] *Id.*, at pp. 32-38.

[22] *Id.*, at pp. 51-58.

U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (holding the test for harmless error in a federal habeas corpus action brought by a state prisoner is "whether the error had substantial and injurious effect or influence in determining the jury's verdict").  As the state appellate court perceptively pointed out, the central *factual* dispute during the guilt-innocence phase of petitioner's trial was whether petitioner inflicted the severe injuries sustained by Mitchell (as she testified) or whether, as petitioner contended, Mitchell inflicted those same injuries upon herself.  There was no legitimate dispute over the fact Mitchell did, in fact, sustain serious head and facial injuries (as graphically depicted in numerous photographs admitted into evidence), a concussion, and a knife wound to her shoulder which required sutures.[23]  *That petitioner's jury found him guilty of "aggravated assault" at all necessarily means there was jury unanimity regarding the party responsible for Mitchell's injuries.*

---

[23] Mitchell gave a vivid account of the petitioner's assault upon her on the night in question, including his stabbing her in the shoulder with a knife and his repeated blows to her face with his fists and elbows while he held her down on his bed. S.F. Trial, Volume 3, testimony of Jessica Mitchell, at pp. 20, 24-43, 61-62, 73; Volume 4, testimony of Jessica Mitchell, at p. 11.
    Numerous photographs detailing Mitchell's injuries were admitted into evidence during the trial, including State Exhibit nos. 31, 33, 34, 35, 39, 41, 42, and 47.  These photographs are contained in S.F. Trial, Volume 6.
    There was no dispute regarding the seriousness of Mitchell's injuries. S.F. Trial, Volume 4, testimony of Mark Norwid, at pp. 71-80.

3.   Conclusions

Under such circumstances, the state appellate court's and state habeas court's rejections on the merits of petitioner's complaints about his erroneous guilt-innocence phase jury charge and verdict form were neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.   On the contrary, the state appellate and habeas courts' rejections on the merits of petitioner's complaints about his erroneous guilt-innocence phase jury charge and verdict form were consistent with well-settled federal law, including the federal harmless error standard.   Petitioner first three claims for relief herein do not warrant federal habeas corpus relief.[24]

_____

[24] This Court also wishes to point out that, despite the wealth of evidence showing petitioner was guilty under all four separate aggravated assault offenses with which he was charged, the trial court's erroneous guilt-innocence phase jury instructions and verdict form, together with the state appellate court's subsequent modification of petitioner's sentence, effectively reduced petitioner's criminal liability from a substantially longer prison term (had petitioner been convicted on all four Counts with a deadly weapon finding) to the mere twenty year sentence petitioner is currently serving.   The overwhelming evidence of Mitchell's extensive injuries, together with the jury's "guilty" verdict on the omnibus "aggravated assault" charge (which necessarily meant the jury rejected petitioner's alibi defense), convince this Court that, had petitioner's jury been properly instructed to render separate verdicts on each Count against petitioner, petitioner would have been convicted on all four Counts with a deadly weapon finding on

## IV. Prejudicial Prosecutorial Voir Dire & Jury Argument

A.    The Claim

In his fourth claim herein, petitioner argues the prosecution improperly argued (1) the jury's verdict did not have to be unanimous and (2) the jury had to impose a twenty year sentence or else petitioner would receive probation.

B.    State Court Disposition

Petitioner raised these same complaints for the first time as the fourth ground for relief in petitioner's state habeas corpus application.[25]  The state habeas trial court recommended summary dismissal of these claims on the ground petitioner could have raised same in his direct appeal but failed to do so.[26]  In an unpublished Order issued March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application based on the trial court's findings made without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

At the conclusion of the *guilt-innocence* phase of petitioner's trial, the prosecution argued, in pertinent part, as follows:

---

each Count.

[25] *State Habeas Transcript, at p. 14.*

[26] *State Habeas Transcript, at p. 66.*

I would like to point out one thing to you.  On
Page Nine it talks about the offense of aggravated
assault.  Okay.  If you heard -- as you heard the Judge
read to you earlier, there are several different manner
and means that were alleged how *[sic]* that aggravated
assault occurred.  Okay.

There was he threatened her with bodily injury,
exhibited a knife.  Or he recklessly caused serious
bodily injury by striking her with his hand and elbow.
Or he then and there intentionally, knowingly, and
recklessly caused bodily injury by striking or
strangling her with his hand.

I want to point out, make sure you look where the
semi colons are.  This is saying or, or, or.  You don't
have to find all of that true in order to find the
defendant guilty of aggravated assault.  These are all
different manners and means that have been alleged by
the State.  There is just one aggravated assault here.
It was alleged in different ways for it to have
occurred.  And you just must agree that he is guilty of
aggravated assault.  Okay.[27]

Petitioner's trial counsel voiced no objection to the foregoing

jury argument.

During closing argument at the *punishment* phase of

petitioner's trial, the prosecution made the following

statements, again without any objection from petitioner's trial

counsel:

Remember, ladies and gentlemen, probation means
that Charlie Gonzales walks out that door when you do
today.  Remember that.  Thank you for your attention.[28]

*   *   *

Twenty is all you can give him.  With a deadly
weapon finding he's guaranteed to be there at least ten
years.  Those boys [petitioner's sons] will be eighteen

---

[27] S.F. Trial, Volume 5, at pp. 31-32.

[28] S.F. Trial, Volume 5, at p. 112.

and nineteen when he is parole eligible if you give him
the maximum with the deadly weapon finding.  You know
that on August 26 of 2000 his hands and elbows and that
knife were all deadly weapons.  You know it.  You have
seen the injuries.

　　And you know, having heard from [petitioner's ex-
wife] Laura, that although Jessica certainly has her
own set of problems, that what she described happening
that night, happened that night.  All you can give him
is twenty.  I ask for the full twenty with a deadly
weapon finding.  Thank you.[29]

C.    AEDPA Review

1.    Clearly Established Federal Law

An improper prosecutorial argument which does *not* implicate

a specific constitutional provision is not cognizable on

collateral review unless the defendant shows an abridgment of due

process, i.e., the improper argument rendered the proceeding

fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181,

106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)("it is not enough

that the prosecutors' remarks were undesirable or even

universally condemned.  The relevant inquiry is whether the

prosecutors' comments so infected the trial with unfairness as to

make the resulting conviction a denial of due process"); *Harris*

*v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002)(prosecutorial

remarks are a sufficient ground for habeas relief only if they

are so prejudicial they render the trial fundamentally unfair and

such unfairness exists only if the prosecutor's remarks evince

---

[29] S.F. Trial, Volume 5, at pp. 120-21.

either persistent and pronounced misconduct or the evidence was so insubstantial that, in probability, but for the remarks no conviction would have occurred), *cert. denied*, 540 U.S. 1218 (2004); *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000)(holding (1) the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process and (2) the prosecutor is permitted to argue to the jury those inferences and conclusions the prosecutor wishes the jury to draw from the evidence so long as those inferences are grounded upon evidence), *cert. denied*, 532 U.S. 915 (2001); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000)(holding (1) federal habeas review of allegedly improper prosecutorial statements made during the punishment phase of a capital trial focuses on whether the remarks so infected the punishment phase as to make the resulting sentence a denial of due process and (2) a trial is fundamentally unfair only if there is a reasonable probability the verdict might have been different had the trial been properly conducted), *cert. dism'd*, 531 U.S. 1134 (2001).

The same standard applies to the review of complaints of improper prosecutorial argument raised in federal direct appeals. *See United States v. Young*, 470 U.S. 1, 11-12, 105 S.Ct. 1038, 1044-45, 84 L.Ed.2d 1 (1985)("a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments

standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial"); *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007) (inappropriate prosecutorial comments, standing alone, would not justify reversal of a criminal conviction obtained in an otherwise fair proceeding); *United States v. Hitt*, 473 F.3d 146, 161 (5th Cir. 2006)(improper argument warrants reversal when taken as a whole in the context of the entire case, it prejudicially affected substantial rights of the defendant), *cert. denied*, 549 U.S. 1360 (2007); *United States v. Gamez-Gonzalez*, 319 F.3d 695, 701 (5th Cir. 2003)(inappropriate prosecutorial argument constitutes reversible error only if it is so improper as to affect the defendant's substantial rights), *cert. denied*, 538 U.S. 1068 (2003); *United States v. Virgen-Moreno*, 265 F.3d 276, 290-91 (5th Cir. 2001)(the determinative question is whether the prosecution's remarks cast serious doubt on the correctness of the jury's verdict), *cert. denied*, 534 U.S. 1095 (2002).

Improper jury argument by the state does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Darden v. Wainwright*, 477 U.S. at

31

181, 106 S.Ct. at 2471; *Harris v. Cockrell*, 313 F.3d at 245.  To establish a prosecutor's remarks were so inflammatory, the petitioner must demonstrate the misconduct was persistent and pronounced or the evidence of guilt so insubstantial the conviction would not have occurred but for the improper remarks. *Harris v. Cockrell*, 313 F.3d at 245; *Turner v. Johnson*, 106 F.3d 1178, 1188 (5th Cir. 1997); *Nichols v. Scott*, 69 F.3d 1255, 1278 (5th Cir. 1995)(wholly apart from the issue of procedural bar, failure to object to an argument is an indication it was not perceived as having a substantial adverse effect or would not naturally and necessarily be understood as advancing improper considerations), *cert. denied*, 518 U.S. 1022 (1996); *Milton v. Procunier*, 744 F.2d 1091, 1095 (5th Cir. 1984)(holding the same), *cert. denied*, 471 U.S. 1030 (1985); *Buxton v. Collins*, 925 F.2d 816,  825 (5th Cir. 1991)(recognizing the four proper areas for prosecutorial jury argument are summation of the evidence, reasonable inference from the evidence, answers to opposing counsel's argument, and pleas for law enforcement), *cert. denied*, 498 U.S. 1128(1991).

"A prosecutor's improper argument will, in itself, exceed constitutional limitations in only the most egregious cases." *Harris v. Johnson*, 313 F.3d at 245 n.12; *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987); *Menzies v. Procunier*, 743 F.2d 281, 288-89 (5th Cir. 1984).  The burden is on the habeas

petitioner to show a reasonable probability that, but for the prosecutor's remarks, the result of the trial would have been different. *Nichols v. Scott*, 69 F.3d at 1278.

In reviewing complaints about allegedly improper prosecutorial argument, the relevant inquiry considers (1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of the defendant's guilt. *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007); *United States v. Hitt*, 473 F.3d at 161; *United States v. Gamez-Gonzalez*, 319 F.3d at 701; *United States v. Virgen-Moreno*, 265 F.3d at 290-91.

2.   <u>Synthesis</u>

Petitioner does not identify any specific or particular statements made by the prosecutors during voir dire which he claims rendered his entire trial fundamentally unfair.  This Court has scoured petitioner's pro se pleadings in this proceeding, as well as the petitioner's state habeas corpus proceeding, and finds no clue, much less a record reference, to help identify precisely what prosecutorial statements allegedly made during voir dire petitioner now claims were objectionable. This Court's obligation to liberally construe pro se pleadings, *see Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), does not compel this Court

to exercise clairvoyance. *See Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008)(even pro se appellants must brief their claims); *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007)(holding the same).  Conclusory assertions, bereft of specific factual support, do not warrant federal habeas relief. *See Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008)(conclusory allegations regarding prejudice will not support a finding of ineffective assistance); *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002)(holding conclusory assertions of ineffective assistance will not support federal habeas relief), *cert. denied*, 537 U.S. 1084 (2002).

Insofar as petitioner complains about the prosecutor's reiteration of the trial court's erroneous lumping of all four of petitioner's aggravated assault charges into a single charge of "aggravated assault,"[30] for the same reasons explained at length in Section III.C.2. above, neither the error in question nor the prosecutor's brief reference thereto rendered petitioner's trial fundamentally unfair.  Any arguable deprivation of petitioner's federal constitutional rights arising from the prosecutor's guilt-innocence phase closing argument was harmless, at best.  At the guilt-innocence phase of petitioner's trial, the jury was faced with two completely divergent factual scenarios: Mitchell's detailed account of petitioner's aggravated assaults upon her,

---

[30] Trial Transcript, at pp. 206, 211.

substantiated by a wealth of forensic and medical evidence establishing the extensive nature of her injuries, on the one hand; and petitioner's alibi testimony and alibi witnesses, on the other.  Thus, at the guilt-innocence phase of petitioner's trial, the jury was not called upon to make choices from among mutually exclusive factual theories of aggravated assault.  Under such circumstances, the prosecution's ultimately mistaken characterization of the four Counts against petitioner as merely different ways of accomplishing the same aggravated assault did not render petitioner's trial fundamentally unfair.

Finally, petitioner has failed to identify any legitimate legal basis for any objection to the prosecution's punishment-phase closing argument.  Proper prosecutorial closing argument includes summation of the evidence, reasonable inferences drawn from the evidence, answers to opposing counsel's argument, and pleas for law enforcement. *Buxton v. Collins*, 925 F.2d at 825. Petitioner does not allege any specific facts showing the prosecutor's accurate recitation of the outcomes of potential punishment-phase verdicts fell outside the wide range of proper prosecutorial arguments that constitute pleas for law enforcement.  By the time the jury reached the final portion of the punishment phase of petitioner's trial, the jury had already concluded petitioner was guilty of committing an aggravated assault on Jessica Mitchell which Dr. Norwid described as having

inflicted serious bodily injury.  The prosecutor could permissibly remind the jury of that fact, as well as the evidence then before it establishing petitioner's long history of violent conduct, and urge imposition of the maximum sentence allowed by law.  The prosecutor was also free to infer from the ample evidence then before the jury establishing petitioner's long track record of violence toward woman that petitioner was a dangerous person likely to commit future acts of criminal violence, particularly targeted against women.  Under such circumstances, the petitioner has identified no legitimate basis for any objection to the prosecution's punishment-phase closing argument.

    3.  <u>Conclusions</u>

Petitioner has not alleged any specific facts concerning allegedly improper prosecutorial comments during voir dire which warrant federal habeas corpus relief.  Petitioner's complaints regarding the prosecutor's guilt-innocence-phase closing arguments do not rise above the level of harmless error. Petitioner has identified nothing legally objectionable in the prosecution's punishment-phase closing argument.  Accordingly, the Texas Court of Criminal Appeals' denial on the merits of petitioner's conclusory complaints about allegedly improper prosecutorial arguments during voir dire and both phases of petitioner's trial was neither contrary to, nor involved an

36

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

## V. <u>Ineffective Assistance by Trial Counsel</u>

A.   <u>The Claim</u>

Petitioner argues in his fifth claim herein that his trial counsel rendered ineffective assistance by failing to object to the trial court's guilt-innocence phase verdict form which lumped all four of petitioner's aggravated assault Counts into a single issue for the jury's consideration.

B.   <u>State Court Disposition</u>

Petitioner presented this same claim as his fifth ground for relief in his state habeas corpus application.[31]  The state trial court initially found the state appellate court's determination of "no egregious harm" precluded a finding of "prejudice" under the familiar *Strickland* standard on petitioner's complaint about his trial counsel's failure to timely object to the erroneous guilt-innocence phase jury charge and verdict form.[32]  Following a remand for an evidentiary hearing on this same claim, however, the state trial court found (1) petitioner's trial counsel was aware of the unanimity requirement and questioned whether the

---

[31] *State Habeas Transcript*, at p. 15.

[32] *State Habeas Transcript, at p. 66.*

trial court's verdict form permitted a non-unanimous verdict, (2) petitioner's trial counsel reviewed applicable state law and reasonably concluded a general verdict form was supported by then-existing state law, (3) at the time of petitioner's trial state law on this issue appeared to suggest that aggravated assault under the circumstances charged in petitioner's indictment was a "result oriented" offense for which submission of a general verdict form was appropriate, (4) this legal issue was not resolved until 2006 when an intermediate Texas Court of Appeals in Austin decided the issue in a manner which precluded use of a general verdict form in cases such as petitioner's, and (5) at the time of the petitioner's trial, petitioner's trial counsel failed to object to the general verdict form because said counsel reasonably, albeit as it later turned out erroneously, believed such a verdict form was appropriate under applicable state law.[33]  Based on those findings, the state trial court concluded (1) petitioner's ineffective assistance claim failed to satisfy the deficient performance prong of *Strickland* and (2) because petitioner  suffered no "egregious harm," petitioner's ineffective assistance claim also failed to satisfy the prejudice prong of *Strickland.*[34]

---

[33] *Supplemental State Habeas Transcript, at pp. 17-18.*

[34] *Id., at p. 18.*

C.   <u>AEDPA Review</u>

1.   <u>Clearly Established Federal Law</u>

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of *trial* counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> or death sentence has two components.  First, the
> defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious
> as to deprive the defendant of a fair trial, a trial
> whose result is reliable.

To satisfy the first prong of *Strickland*, i.e., establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000).  In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. at 687-91, 104 S.Ct. at 2064-66. Courts are extremely

deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. *See Wiggins v. Smith*, 539 U.S. at 523, 123 S.Ct. at 2536 (holding the proper analysis under the first prong of *Strickland* is an objective review of the reasonableness of counsel's performance under prevailing professional norms which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time).  It is strongly presumed  counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066.

     To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542; *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*  In evaluating prejudice, a federal habeas court must re-weigh the evidence in aggravation against the totality of available mitigating evidence. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542.

40

In evaluating petitioner's complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004). In making this determination, this Court must consider the underlying *Strickland* standard. *Id.* In those instances in which the state courts failed to adjudicate either prong of the *Strickland* test, this Court's review of the un-adjudicated prong is *de novo*. *See Rompilla v. Beard*, 545 U.S. 374, 390, 125 S.Ct. 2456, 2467, 162 L.Ed.2d 360 (2005)(holding *de novo* review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542 (holding the same).

A habeas petitioner has the burden to prove both prongs of the *Strickland* ineffective assistance standard by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000), *cert. denied*, 522 U.S. 1067 (2001). Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and

41

made all significant decisions in the exercise of reasonable professional judgment. *Bell v. Cone*, 535 U.S. at 698, 122 S.Ct. at 1852; *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066; *Scheanette v. Quarterman*, 482 F.3d 815, 820 (5th Cir. 2007); *Sonnier v. Quarterman*, 476 F.3d at 356; *Amador v. Quarterman*, 458 F.3d at 410; *Gonzales v. Quarterman*, 458 F.3d 384, 390 (5th Cir. 2006), *cert. denied*, 549 U.S. 1323 (2007).

    2.   <u>Synthesis</u>

    In evaluating petitioner's complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d at 444.

        a.   <u>No Deficient Performance</u>

    The state habeas trial court specifically found state case law at the time of petitioner's trial at least arguably supported the trial judge's decision to submit all four of the aggravated assault Counts against petitioner in a general verdict form.[35] The state habeas trial court concluded that, given the unsettled status of Texas law at the time of petitioner's trial, it was objectively reasonable for petitioner's trial counsel to have concluded, as said counsel claims in his affidavit he did, that a

---

    [35] *Supplemental State Habeas Transcript, at pp, 17-18.*

general submission of all four of the aggravated assault counts against petitioner was legally permissible.[36]  This Court must defer to the state habeas court's characterization of applicable state law at the time of petitioner's trial. *Bradshaw v. Richey*, 546 U.S. at 76, 126 S.Ct. at 604 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Petitioner argues that his trial counsel should have objected to the error of state law committed during his trial, which the Waco Court of Appeals noted in its April 5, 2006 opinion.  However, as noted by the state habeas court, it was objectively reasonable for the petitioner's trial counsel to have relied upon the same state law authorities relied upon by the state trial judge who crafted the petitioner's unified aggravated assault verdict form. *See, e.g., Cole v. State*, 46 S.W.3d 427, 434 (Tex. App. - Fort Worth 2001, *petition ref'd*)(holding in an aggravated assault case, "where different theories of the offense are submitted to the jury in the disjunctive, a general verdict form is sufficient if the evidence supports at least one of the theories submitted.").  The petitioner's trial counsel cannot reasonably be faulted for having relied upon a particular state appellate court opinion or line of opinions at a time when the

---

[36] *Id.*

state habeas court determined the intermediate Texas appellate courts were in disagreement on the very subject in question.

The state habeas court determined the specific issue in question was not definitively resolved until the Austin Court of Appeals handed down its decision in *Marinos v. State*, 186 S.W.3d 167, 174 (Tex. App. - Austin 2006, *petition ref'd*)(holding that aggravated assault based upon bodily injury and aggravated assault based upon threat are two, entirely separate, criminal offenses which must be submitted separately to a criminal jury). Interestingly, the Austin Court of Criminal Appeals' opinion in *Marinos*, expressly relied upon the Texas Court of Criminal Appeals' opinion in *Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005), one of the opinions on which petitioner relies herein.

The state habeas court reasonably concluded that petitioner's trial counsel reasonably relied upon the state law authorities in existence at the time of petitioner's trial presented to said counsel by the state habeas judge who fashioned petitioner's general verdict form.

Furthermore, the majority of the authorities relied upon by petitioner in support of his ineffective assistance claim, as well as the Texas legal authorities underlying petitioner's first four claims herein, consist of Texas appellate court opinions handed down years *after* the date of petitioner's trial. *See, e.g.*, *Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005);

44

*Sanchez v. State*, 182 S.W.3d 34, (Tex, App. – San Antonio 2005, *no petition*); *Tyson v. State*, 172 S.W.3d 172 (Tex. App. – Fort Worth 2005, *no petition*); *Hisey v. State*, 129 S.W.3d 649 (Tex. App. - Houston [1st Dist.] 2004, *petition dism'd*).  Petitioner's state habeas counsel cannot reasonably be faulted for having failed to anticipate these opinions at the time of petitioner's 2003 trial.  "Clairvoyance is not a required attribute of effective representation." *Sharp v. Johnson*, 107 F.3d 282, 289 n.28 (5th Cir. 1997).

The lone *Texas* appellate court opinion predating petitioner's trial which petitioner now claims should have alerted his trial counsel to the impropriety of petitioner's unified aggravated assault verdict form, i.e., *Clear v. State*, 76 S.W.3d 622 (Tex. App. – Corpus Christi 2002, no petition), involved multiple charges of aggravated sexual assault of a child.[37]  Petitioner's trial counsel could reasonably have declined to rely on the opinion in *Clear* for several reasons. First, it is uncertain from the published opinion in *Clear* whether that defendant in that case was charged in a single Count or separate Counts, as was petitioner herein.  Second, the opinion in *Clear* was also never the subject of a petition for

---

[37] *Clear* was charged with having penetrated the mouth of the victim with his penis, penetrated the victim's sexual organ with his penis, and having penetrated the victim's sexual organ with his finger.

discretionary review.  Finally, the Texas Court of Criminal Appeals opinion relied upon by the Corpus Christi Court of Appeals in *Clear* to justify reversal even in the absence of a timely objection to the jury charge involved multiple instances of indecency with a child alleged in the same Count and, thus, was arguably distinguishable from petitioner's aggravated assault charges. *See Francis v. State*, 36 S.W.3d 121, 122-23 (Tex. Crim. App. 2000)(addressing multiple acts of indecency with a child, each taking place on different dates).

Petitioner's trial counsel cannot reasonably be faulted for choosing to acknowledge the legal authorities relied upon by petitioner's trial judge.  Given the split of authority existing between the various Texas intermediate Courts of Appeal on this issue at the time of petitioner's 2003 trial recognized by the state habeas court, this Court must be highly deferential to the tactical decision made by petitioner's trial counsel not to object to the unified aggravated assault verdict form.[38]

Under these circumstances, the state habeas court reasonably concluded petitioner's trial counsel acted in an objectively reasonable manner in failing to object in 2003 to the

---

[38] As noted above, by consolidating all of petitioner's aggravated assault charges into a single verdict form, the state trial court significantly reduced the petitioner's potential criminal liability.

consolidated submission of petitioner's four aggravated assault charges to the jury in a single verdict form.

      b.  <u>No Prejudice</u>

Even a cursory review of the state habeas trial court's findings relating to petitioner's ineffective assistance claim convinces this Court the state habeas court did not thoroughly consider the "prejudice" prong of *Strickland.*  The state habeas trial court merely concluded that, had petitioner's trial counsel's performance been deficient, "there is no egregious harm" and petitioner was not "grievously wronged."[39]  The "prejudice" prong of *Strickland* involves a more searching inquiry than the Texas appellate courts' highly deferential standard of "egregious harm."

Thus, the state habeas court failed to conduct a meaningful analysis of the "prejudice" prong of *Strickland*.  In those instances in which the state courts failed to adjudicate either prong of the *Strickland* test, this Court's review of the un-adjudicated prong is *de novo*. *See Rompilla v. Beard*, 545 U.S. 374, 390, 125 S.Ct. 2456, 2467, 162 L.Ed.2d 360 (2005)(holding *de novo* review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never

---

[39] *Supplemental State Habeas Transcript, at p. 18.*

addressed the issue of prejudice); *Wiggins v. Smith*, 539 U.S. at
534, 123 S.Ct. at 2542 (holding the same).

The failure of petitioner's trial counsel to object to the
unified submission of petitioner's four aggravated assault
charges had the immediate effect of reducing in half the
potential jury verdicts convicting petitioner of aggravated
assault.  Consolidation of the verdict form ultimately resulted
in petitioner receiving a single judgment for aggravated assault,
rather than four.  Given the overwhelming evidence which
established Jessica Mitchell's extensive injuries, Dr. Norwid's
unchallenged medical opinion that her injuries were likely not
self-inflicted, the evidence showing Mitchell fled petitioner's
house in a bathrobe the night of the assault and collapsed
unconscious in the living room of a neighbor's home, the evidence
showing petitioner had a long history of violence against not
only Mitchell but also his ex-wife, and the inherent
implausibility of petitioner's alibi defense, there is no
reasonable likelihood that the outcome of either phase of
petitioner's trial would have been different but for the failure
of petitioner's trial counsel to object to the general verdict
form employed in connection with petitioner's four aggravated
assault charges.  On the contrary, had such an objection been
timely made and sustained, there is every reason to believe

petitioner would now be facing four judgments of conviction for aggravated assault, rather than one.

### 3.   Conclusions

The Texas Court of Criminal Appeals reasonably concluded petitioner's ineffective assistance complaint against his trial counsel failed to satisfy the deficient performance prong of the *Strickland* test.  This Court independently concludes there is no reasonable probability that, but for the failure of petitioner's trial counsel to timely object to the petitioner's consolidated aggravated assault verdict form, the outcome of either phase of petitioner's trial would have been different.  Therefore, the Texas Court of Criminal Appeals' rejection on the merits of petitioner's ineffective assistance claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

## VI. Insufficient Evidence

A.   The Claim

In his sixth claim herein, petitioner argues there was insufficient evidence showing a knife was exhibited or used to assault Mitchell.

B.   <u>State Court Disposition</u>

     In the course of petitioner's direct appeal, the Waco Court
of Appeals held as follows:

> The knife at issue was a kitchen knife that a
> police officer and a physician said was capable of
> causing death or serious bodily injury.  The record
> contains a photograph of the knife.  The complainant
> testified that Gonzales forced her to sit on the toilet
> and perform oral sex on him while he held the knife to
> her throat and also poked her in the chest with it.
> Gonzales cut her on the shoulder blade with the knife
> while he was "slapping" her with it.  This evidence is
> legally and factually sufficient to support a finding
> that the knife was used or exhibited as a deadly weapon
> during the aggravated assault.

*Gonzales v. State*. 191 S.W.3d at 752.

     The Texas Court of Criminal Appeals denied petitioner's
petition for discretionary review on December 6, 2006.

     Petitioner re-urged an insufficient evidence point
complaining about the evidentiary support for the jury's deadly
weapon finding as ground six in his state habeas corpus
application.[40]  The state trial court recommended summary
dismissal of this claim on the basis that it had already been
rejected on the merits in the course of petitioner's direct
appeal.[41]  In an unpublished Order issued March 12, 2008, the
Texas Court of Criminal Appeals denied petitioner's state habeas
corpus application based on the trial court's findings made

---

[40] *State Habeas Transcript*, at p. 16.

[41] *State Habeas Transcript*, at p. 66.

without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

C.   AEDPA Review

  1.   Clearly Established Federal Law

  The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Aguilar v. Dretke*, 428 F.3d 526, 534 (5th Cir. 2005), *cert. denied*, 547 U.S. 1136 (2006).

  2.   Synthesis

  The Texas appellate courts' rejection on the merits of petitioner's insufficient evidence point of error constituted an eminently reasonable application of the *Jackson v. Virginia* standard.  The evidence before the jury at the guilt-innocence phase of petitioner's capital trial included not only (1) uncontradicted expert testimony from two police officers and a physician regarding the potential for death from the knife in question[42] but also (2) unchallenged evidence showing Mitchell actually sustained a laceration to her left shoulder which was

---

  [42] S.F. Trial, Volume 4, testimony of Raymond Woodruff, at p. 68; testimony of Mark Norwid, at pp. 72-73; testimony of Tracy Simonette, at p. 130.

consistent with the knife, required sutures, and unlikely to have been self-inflicted.[43]  When viewed in the light most favorable to the jury's verdict, including the jury's express deadly weapon finding, the foregoing evidence is more than sufficient under the *Jackson* standard.

3.   <u>Conclusions</u>

The Texas courts' rejections on the merits of petitioner's insufficient evidence complaint about the use or exhibition of a deadly weapon during the course of petitioner's offense was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state direct appeal and state habeas corpus proceedings. Petitioner's sixth claim herein is frivolous.

## VII. <u>Knowing Use of Perjured Testimony</u>

A.   <u>The Claim</u>

In his seventh claim herein, petitioner argues the prosecution knowingly used perjured testimony from Mitchell to secure petitioner's conviction.

---

[43] S.F. Trial, Volume 4, testimony of Mark Norwid, at pp. 72-75, 79-80; testimony of Coil Conway, at p. 97; testimony of Tracy Simonette, at pp. 110-11, 125-26.

B.   <u>State Court Disposition</u>

Petitioner raised this same claim as his seventh ground for state habeas relief.[44]  The state habeas trial court recommended summary dismissal of this claim on the basis petitioner could and should have been raised it on direct appeal.[45]  In an unpublished Order issued March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application based on the trial court's findings made without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

C.   <u>AEDPA Review</u>

1.   <u>Clearly Established Federal Law</u>

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150, 153-54, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269-70, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).  To succeed in showing a due process violation from the use of allegedly perjured testimony, a defendant has the burden of establishing that (1) the witness in question actually gave false testimony, (2) the falsity was material in that there was a reasonable likelihood that it affected the judgment of the jury, and (3) the prosecution used the testimony in question

---

[44] *State Habeas Transcript*, at p. 17.

[45] *State Habeas Transcript*, at p. 66.

*knowing* that it was false. *Giglio v. United States*, 405 U.S. at
153-54, 92 S.Ct. at 766; *United States v. Gonzales*, 436 F.3d 560,
580 (5th Cir. 2006), *cert. denied*, 547 U.S. 1139 (2006); *Summers
v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005), *cert. denied*, 549
U.S. 840 (2006).

    2.  <u>Synthesis</u>

        a.  <u>The Arguments</u>

Petitioner argues (1) the prosecution had to issue a writ of
attachment to get Mitchell to court, (2) Mitchell "repeatedly
lied on the stand," (3) petitioner's trial counsel impeached
Mitchell "on cross-examination several times before she admitted
some of the truth," (4) Mitchell admitted she was previously
placed on probation for filing a false sexual assault report
against petitioner, and (5) Dr. Norwid testified the cut on
Mitchell's back did not confirm Mitchell's trial testimony that
petitioner had repeatedly tapped her on the back with the knife
because there was only a single cut.  However, petitioner does
not identify in his pleadings herein or in his state habeas
pleadings with any reasonable degree of specificity precisely
which portions of Mitchell's trial testimony he claims were
factually inaccurate.

        b.  <u>The Trial Testimony</u>

Mitchell was what can most charitably be called a "hostile"
witness for the prosecution.  Mitchell made it very clear

throughout her trial testimony that she feared for her life if she testified against petitioner and she was not appearing as a witness of her own free will.[46]  It is likewise undisputed Mitchell testified she had previously filed a false police report accusing petitioner of having raped her.[47]  Petitioner does not contend any of the foregoing trial testimony was factually inaccurate.

Mitchell also testified the petitioner beat her at least once a month during the four years they lived together but, throughout that same time frame, they continued to have consensual sexual relations.[48]

On cross-examination on the first day of trial by petitioner's trial counsel, Mitchell admitted she (1) had once scratched the paint on petitioner's truck with her car keys, (2) had lied previously to get petitioner jailed, (3) had called petitioner recently, and (4) went with petitioner to South Padre Island in April, 2003.[49]  Petitioner does not allege any of this testimony was factually inaccurate.

---

[46] S.F. Trial, Volume 3, testimony of Jessica Mitchell, at pp. 13-14, 44, 53-54, 79-80.

[47] S.F. Trial, Volume 3, testimony of Jessica Mitchell, at pp. 51-52, 66-67, 69, 78.

[48] *Id.*, at p. 51.

[49] *Id.*, at pp. 63-69.

The following day, the prosecution recalled Mitchell to the stand.  At that point, Mitchell testified (1) she had gone with petitioner to South Padre Island in the Summer of 2003 but had not spent the night there with him, (2) during a two-week period in the Summer of 2003, she and petitioner had consensual sexual relations and attempted to reconcile, (3) she had attempted to reconcile with petitioner several times, including in March and April, 2003, and (4) she suffers from memory problems relating to the many beatings petitioner gave her over the course of their relationship.[50]  Petitioner does not allege any specific facts, much less furnish any evidence, showing any of the foregoing testimony was factually inaccurate or that the prosecution knew such testimony to be factually inaccurate at the time Mitchell testified on direct examination.

On cross-examination, Mitchell testified (1) she and petitioner traveled together and stayed together at South Padre Island on March 23, 2003, (2) she had sexual relations with petitioner "quite a few times" since the night the petitioner assaulted her, and (3) she had misled the jury regarding that fact in her testimony the previous day.[51]

---

[50] S.F. Trial, Volume 4, testimony of Jessica Mitchell, at pp. 3-16, 11-13.

[51] *Id.*, at pp. 9-11, 15-16.

Petitioner's trial counsel re-called Mitchell to testify
during the defense's presentation of evidence and elicited
testimony from Mitchell establishing that (1) she had previously
lied to get petitioner arrested for rape, (2) she had sexual
relations with petitioner many times since August, 2001, (3) she
had once confronted petitioner's current girlfriend with a metal
pole, (4) she had left threatening and abusive messages on
petitioner's answering machine, (5) she was upset with petitioner
because he would not love her back, and (6) petitioner once took
Mitchell to San Antonio.[52]   On cross-examination, the prosecution
elicited testimony from Mitchell that (1) she had never struck
petitioner because she was too afraid to fight back when he
assaulted her, (2) petitioner regularly beat her and then
apologized for doing so, and (3) petitioner assaulted her several
times during their relationship.[53]

Petitioner testified (1) he had never struck, cut, or
threatened Mitchell, (2) he had never called her at any time in
the past year, (3) he left his home on the night in question with
a friend after having consensual sex and arguing with Mitchell,
who had threatened to commit suicide with a knife which he took
away from her, (4) he returned to his home late that night with

---

[52] S.F. Trial, Volume 4, testimony of Jessica Mitchell, at
pp. 224-34, 241-42.

[53] *Id.*, at pp. 235-41, 242-43.

his friend but, when they saw multiple police and emergency vehicles outside his home, they went to another location to spend the night, (5) when he returned to his home the day after his alleged assault on Mitchell, he never saw any of the blood stains inside his home clearly visible in the many crime scene photographs admitted into evidence, and (6) Mitchell subsequently telephoned him and apologized.[54]

    c.   <u>Analysis</u>

For use of perjured testimony to constitute constitutional error, the prosecution must have <u>knowingly</u> used the testimony to obtain a conviction. *United States v. Gonzales*, 436 F.3d 560, 580 (5th Cir. 2006), *cert. denied*, 547 U.S. 1139 (2006); *Carter v. Johnson*, 131 F.3d 452, 458 (5th Cir. 1997), *cert. denied*, 523 U.S. 1099 (1998); *Spence v. Johnson*, 80 F.3d 989, 996-97 (5th Cir. 1996), *cert. denied*, 519 U.S. 1012 (1996); *Black v. Collins*, 962 F.2d 394, 407 (5th Cir. 1992), *cert. denied*, 504 U.S. 992 (1992).  In order for allegations of perjured testimony to constitute a due process violation, a defendant "must show that the prosecution knowingly presented materially false evidence to the jury." *Carter v. Johnson*, 131 F.3d at 458; *Spence v. Johnson*, 80 F.3d at 996; *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492

---

[54] S.F. Trial, Volume 4, testimony of Charlie Gonzales, at pp. 244-306.

(5th Cir. 1989).  Petitioner has not alleged any specific facts, much less furnished this Court with admissible evidence, showing the prosecution elicited any testimony from Mitchell at petitioner's trial *with knowledge* said testimony was factually inaccurate.

For the perjury to be material, there must have been a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Goodwin v. Johnson*, 132 F.3d 162, 185 (5th Cir. 1997); *Carter v. Johnson*, 131 F.3d at 459; *Spence v. Johnson*, 80 F.3d at 997.  Contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflict between reports, written statements, and the trial testimony of prosecution witnesses do <u>not</u>, standing alone, establish perjury. *See Koch v. Puckett*, 907 F.2d at 531 (contradictory trial testimony merely establishes a credibility question for the jury); *United States v. Martinez-Mercado*, 888 F.2d at 1492 (the omission of certain facts from the reports and written statements of the prosecution's witnesses, alone, is not adequate to put the prosecution on notice of perjury on their part, much less to establish that such perjury in fact occurred); *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988), (contradictory testimony from witnesses or inconsistencies in a witness' testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured);

*Hawkins v. Lynaugh*, 844 F.2d 1132, 1141 (5th Cir. 1988)
(inconsistencies between a tape of defendant's interrogation and
the trial testimony of his interrogators, at best, raised only
credibility issues as to the voluntariness of defendant's
confession and did not, therefore, establish perjury), *cert.
denied*, 488 U.S. 900 (1988). *See also Summers v. Dretke*, 431 F.3d
at 873-74 (expert opinion testimony on future dangerousness
immaterial to outcome of capital murder trial's punishment phase
where there was overwhelming evidence of the defendant's
propensity for future violence); *United States v. Boone*, 67 F.3d
76, 78 (5th Cir. 1995)(contradictions regarding irrelevant
details do not render testimony incredible as a matter of law),
*cert. denied*, 516 U.S. 1137 (1996).  Conclusory and speculative
allegations regarding the prosecution's knowledge of allegedly
false testimony do not warrant an evidentiary hearing or even
discovery in a federal habeas corpus proceeding. *East v. Scott*,
55 F.3d 996, 1005 (5th Cir. 1995).

Petitioner has alleged no facts, nor presented any evidence,
establishing the prosecution knowingly employed any factually
inaccurate material evidence to secure petitioner's conviction.
At best, petitioner's arguments amount to contentions that his
own trial testimony was more credible than some portions of
Mitchell's trial testimony.  More specifically, petitioner argues
his version of the events on the night in question in August,

2001 is more credible than Mitchell's trial testimony.  However, as explained above, the vast discrepancies between petitioner's trial testimony on this subject, on the one hand, and Mitchell's, on the other, was a question to be resolved by the jury, which had the first-hand opportunity to examine the demeanor of both witnesses as they gave their conflicting testimony.  This is not a matter for second-guessing by this Court in a habeas corpus proceeding on the basis of a dry record. *See Koch v. Puckett*, 907 F.2d at 531 (contradictory trial testimony merely establishes a credibility question for the jury).  "[D]ue process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements." *Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002), *cert. denied*, 536 U.S. 978 (2002).

Insofar as petitioner complains Mitchell gave testimony on the first day of petitioner's trial which Mitchell subsequently recanted, either during cross-examination by petitioner's trial counsel or in her testimony the second day of trial, any internal inconsistencies within Mitchell's trial testimony do not, standing alone, establish that she furnished perjured testimony. *See Little v. Butler*, 848 F.2d at 76 (contradictory testimony from witnesses or inconsistencies in a witness' testimony at

trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured).

Furthermore, while Mitchell's admissions on the second day of trial that her testimony the previous day (in which she denied she had been sexually active with petitioner since August, 2001) were false did impact upon her credibility, contrary to the theory apparently underlying petitioner's seventh claim herein, that admission did not render the remainder of Mitchell's testimony incredible as a matter of law. *United States v. Boone*, 67 F.3d at 78 (contradictions regarding irrelevant details do not render testimony incredible as a matter of law).  The petitioner's jury was not required, legally or logically, to discount everything else Mitchell said while under oath. Petitioner's jury remained free to consider Mitchell's candid confession, as well as her admissions regarding her previous filing a false criminal complaint against petitioner, in light of the remaining evidence and determine for itself whose account of the events of August 26, 2001 was the more credible.

In sum, petitioner has failed to allege any specific facts, much less furnish any admissible evidence, showing the prosecution *knowingly* elicited any *material* testimony from Mitchell that was factually inaccurate to secure petitioner's conviction.

62

3.    Conclusions

For the foregoing reasons, the Texas Court of Criminal Appeals' rejection on the merits during the course of petitioner's state habeas corpus proceeding of petitioner's complaint about Mitchell's allegedly perjured testimony was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

## VIII. **State Appellate Error & Inconsistency**

A.    The Claims

In his eighth and ninth claims herein, petitioner argues (1) the state appellate courts employed the wrong state legal standard to evaluate his point of error challenging the efficacy of the global verdict form submitted on his aggravated assault charges and (2) the state appellate courts have inconsistently applied the "egregious harm" standard in evaluating complaints about matters to which no timely objection was made at trial.

B.    State Court Disposition

Petitioner presented these same complaints as his eighth and ninth grounds for state habeas corpus relief.[55] The state habeas trial court recommended summary dismissal of both claims on the

_____

[55] *State Habeas Transcript*, at pp. 18-19.

63

basis they were, or could have been, raised on discretionary review by the Texas Court of Criminal Appeals.[56]  In an unpublished Order issued March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application based on the trial court's findings made without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

C.    AEDPA Review

    1.    Clearly Established Federal Law

    Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *See Estelle v. McGuire*, 502 U.S. at 67-68, 112 S.Ct. at 480 (holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102 (recognizing federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874 (holding a federal court may not issue the writ on the basis of a perceived error of state law).

    In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does *not* sit

---

[56] *State Habeas Transcript*, at p. 66.

as a super-state appellate court. *Estelle v. McGuire*, 502 U.S. at 67-68, 112 S.Ct. at 480; *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874.

> When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*.

*Coleman v. Thompson*, 501 U.S. at 730, 111 S.Ct. at 2554.

   2.   <u>Synthesis</u>

Petitioner's complaints about the manner in which the Waco Court of Appeals and Texas Court of Criminal Appeals applied the Texas "egregious harm" standard when reviewing his points of error on direct appeal do not implicate any federal constitutional rights. Instead, they amount to little more than complaints that the state appellate courts erroneously applied particular state legal principles and standards of state judicial review. This federal habeas Court does not sit as a super state-appellate court to correct erroneous rulings on state legal principles made by the state appellate courts. *Estelle v. McGuire*, 502 U.S. at 67-68, 112 S.Ct. at 480; *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874.

Furthermore, for the reasons set forth at length in Section III.C. above, petitioner's complaints regarding the allegedly erroneous application of state "egregious harm" principles in the course of his direct appeal do not rise above the level of harmless error under the familiar *Brecht* standard.

3.   <u>Conclusions</u>

The Texas Court of Criminal Appeals' rejection on the merits in the course of petitioner's state habeas corpus proceeding of petitioner's complaints about the state appellate courts' application of the state egregious harm standard of review was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

## IX. <u>Untimely Notice of Denial of PDR</u>

A.   <u>The Claim</u>

In his tenth claim for relief herein, petitioner argues his state appellate counsel did not send petitioner notice the Texas Court of Criminal Appeals had rejected petitioner's petition for discretionary review until February 14, 2007, more than two months after that state appellate court rejected petitioner's PDR on December 6, 2006.

B.   <u>State Court Disposition</u>

Petitioner raised this same complaint as his tenth ground for relief in his state habeas corpus application.[57]  The state habeas trial court recommended summary dismissal of this claim on the basis it was, or could have been, raised on discretionary review by the Texas Court of Criminal Appeals.[58]  The state habeas trial court did not bother to explain how petitioner could have raised this complaint in connection with a petition for discretionary review that had already been refused.  Nonetheless, in an unpublished Order issued March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application based on the trial court's findings made without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

C.   <u>AEDPA Review</u>

1.   <u>Clearly Established Federal Law</u>

As has already been explained, in the context of a federal habeas corpus proceeding, the harmless error standard focuses on whether an alleged error had a substantial and injurious effect or influence on the outcome of a petitioner's state criminal proceeding. *See Brecht v. Abrahamson*, 507 U.S. at 637, 113 S.Ct. at 1722 (holding the test for harmless error in a federal habeas

---

[57] *State Habeas Transcript*, at p. 20.

[58] *State Habeas Transcript*, at p. 66.

corpus action brought by a state prisoner is "whether the error had substantial and injurious effect or influence in determining the jury's verdict").

    2.  <u>Synthesis</u>

Petitioner has failed to allege any specific facts, much less present any evidence, establishing that he suffered any harm whatsoever as a result of the delay in his receiving notice of the Texas Court of Criminal Appeals' refusal of his PDR.  Despite the delay in notice alleged by petitioner, he was able to timely file a pro se application for state habeas corpus relief on August 10, 2007.[59]  The Texas Court of Criminal Appeals ultimately rejected petitioner's claims for state habeas corpus relief *on the merits*. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).  None of petitioner's state habeas claims were rejected on the basis of any alleged untimeliness.

Petitioner has alleged no specific facts showing that the delayed notice of the refusal of his PDR caused petitioner to lose access to any evidence or testimony which might have been of assistance in his state habeas corpus proceeding or this federal habeas corpus proceeding.  Petitioner does not allege any specific facts showing that any person possessing personal knowledge of any facts relevant to petitioner's case became

---

    [59] *State Habeas Transcript*, at pp. 6-24.

unavailable between December 6, 2006 and February 14, 2007.  Nor does petitioner allege any specific facts showing he suffered any other tactical or strategic disadvantage as a result of the delayed notice in question.  Thus, the delayed notice regarding the refusal of petitioner's PDR did not harm petitioner in any manner whatsoever.  Petitioner's complaint about the delay in question does not rise above the level of harmless error.

    3.    Conclusions

    The Texas Court of Criminal Appeals' rejection on the merits in the course of petitioner's state habeas corpus proceeding of petitioner's complaint regarding the alleged delay in petitioner receiving notice of the refusal of his PDR was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

## X. **Ineffective Assistance on Appeal**

A.    The Claim

    In his eleventh ground for relief herein, petitioner argues that his state appellate counsel rendered ineffective assistance by failing to include a point in petitioner's petition for discretionary review raising the same insufficient evidence points included in petitioner's appellant's brief.

69

B.    State Court Disposition

Petitioner raised this same complaint as his eleventh ground for state habeas relief.[60]  The state habeas trial court recommended summary dismissal of this claim on the basis it was, or could have been, raised on discretionary review by the Texas Court of Criminal Appeals.[61]  Once again, the state habeas trial court did not bother to explain how petitioner could have raised this complaint in connection with a petition for discretionary review that had already been refused.  Nor did the state habeas trial court explain how a pro se litigant could logically be expected to raise a complaint about his state appellate counsel's performance prior to the disposition of that same pro se litigant's direct appeal.  Nonetheless, in an unpublished Order issued March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application based on the trial court's findings made without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

C.    AEDPA Review

1.    Clearly Established Federal Law

The same two-pronged standard for evaluating ineffective assistance claims against trial counsel announced in *Strickland* applies to complaints about the performance of counsel on appeal.

---

[60] *State Habeas Transcript*, at p. 21.

[61] *State Habeas Transcript*, at p. 66.

*See Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000)(holding a petitioner arguing ineffective assistance by his appellate counsel must establish both (1) his appellate counsel's performance was objectively unreasonable and (2) there is a reasonable probability that, but for appellate counsel's objectively unreasonable conduct, the petitioner would have prevailed on appeal); *Henderson v. Quarterman*, 460 F.3d 654, 665 (5th Cir. 2006)(holding *Strickland* furnishes the proper standard for review of a complaint of ineffective assistance by state appellate counsel), *cert. denied*, 549 U.S. 1252 (2007); *Amador v. Quarterman*, 458 F.3d at 410-11 (holding complaints of ineffective assistance by state appellate counsel are governed by the *Strickland* standard of review); *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006)(applying the dual prongs of *Strickland* analysis to complaints of ineffective assistance by appellate counsel), *cert. denied*, 549 U.S. 1120 (2007); *Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004)(holding *Strickland* applies to a prisoner's claim his appellate counsel was ineffective for failing to raise a certain issue on appeal), *cert. denied*, 541 U.S. 1087 (2004); *Gutierrez v. Dretke*, 392 F. Supp. 2d at 861-62 (applying *Strickland* analysis to complaints of ineffective assistance by state appellate counsel).

Thus, the standard for evaluating the performance of counsel on appeal requires inquiry into (1) whether appellate counsel's

performance was deficient, i.e., whether appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) whether appellate counsel's allegedly deficient performance "prejudiced" petitioner, i.e., whether there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of petitioner's appeal would have been different. *Smith v. Robbins*, 528 U.S. at 285, 120 S.Ct. at 764; *Henderson v. Quarterman*, 460 F.3d at 665; *Busby v. Dretke*, 359 F.3d at 714; *Schaetzle v. Cockrell*, 343 F.3d at 444.

Appellate counsel who files a merits brief need not and should not raise every non-frivolous claim but, rather, may select from among them in order to maximize the likelihood of success on appeal. *Smith v. Robbins*, 528 U.S. at 288, 120 S.Ct. at 765; *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983); *Henderson v. Quarterman*, 460 F.3d at 665; Busby v. Dretke, 359 F.3d at 714; *Schaetzle v. Cockrell*, 343 F.3d at 445.

The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy. *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986); *Jones v. Barnes*, 463 U.S. at 751-52, 103 S.Ct. at 3313.

Nonetheless, appellate counsel is obligated to research relevant facts and law or to make an *informed* decision that certain avenues will not prove fruitful. *See Busby v. Dretke*, 359 F.3d at 714 (a reasonable attorney has an obligation to research relevant facts and law or make an informed decision that certain avenues will not be fruitful); *United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004)(holding the same); *Schaetzle v. Cockrell*, 343 F.3d at 445 (failure to raise a discrete, purely legal issue, where the precedent could not be more pellucid or applicable, denies adequate  representation).  Likewise, solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the appellate court's attention. *United States v. Reinhart*, 357 F.3d at 525; *Schaetzle v. Cockrell*, 343 F.3d at 445.

Where, as in petitioner's case, appellate counsel presented, briefed, and argued, albeit unsuccessfully, one or more non-frivolous grounds for relief on appeal and did not seek to withdraw from representation without filing an adequate *Anders* brief, the defendant must satisfy *both* prongs of the *Strickland* test in connection with his claims of ineffective assistance by his appellate counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 & 482, 120 S.Ct. 1029, 1034 & 1037, 145 L.Ed.2d 985 (2000)(holding the dual prongs of *Strickland* apply to complaints of ineffective appellate counsel and recognizing, in cases

73

involving "attorney error," the defendant must show prejudice); *Smith v. Robbins*, 528 U.S. at 287-89, 120 S.Ct. at 765-66 (holding petitioner who argued his appellate counsel rendered ineffective assistance by failing to file a merits brief must satisfy both prongs of *Strickland*); *Busby v. Dretke*, 359 F.3d at 714-17 (applying dual prongs of *Strickland* to a complaint about appellate counsel's failure to present a point of error on appeal).

Furthermore, as correctly pointed out by respondent, where a state grants an indigent criminal defendant the assistance of competent counsel to directly challenge the defendant's conviction through one round of appeal, the constitutional right to the assistance of counsel on appeal does not extend to a subsequent, discretionary, round of state appellate review. *Halbert v. Michigan*, 545 U.S. 605, 611, 125 S.Ct. 2582, 2587, 162 L.Ed.2d 552 (2005); *Ross v. Moffitt*, 417 U.S. 600, 610, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974).

2.   <u>Synthesis</u>

The short answer to petitioner's complaint about the performance of his state appellate counsel in connection with the petitioner's petition for discretionary review is that petitioner's federal constitutional right to the assistance of appellate counsel terminated once the Waco Court of Appeals issued its opinion disposing of petitioner's direct appeal. *See*

74

*Wainwright v. Torna*, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982)(holding that, because a criminal defendant had no constitutional right to counsel on discretionary review, the failure of state appellate counsel to timely file for discretionary review did not implicate any federal constitutional right); *Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002)(holding the failure of a state appellate counsel to notify the defendant regarding the disposition of the defendant's direct appeal did not implicate the Sixth Amendment's right to appellate counsel), *cert. denied*, 538 U.S. 969 (2003); *Clark v. Johnson*, 227 F.3d 273, 283 (5th Cir. 2000)(the right to the assistance of counsel on direct appeal does not extend to discretionary review), *cert. denied*, 531 U.S. 1167 (2001); *Jackson v. Johnson*, 217 F.3d 360, 364-65 (5th Cir. 2000)(the constitutional right to appellate counsel's assistance did not extend to filing a motion for rehearing following disposition of direct appeal by a Texas intermediate Court of Appeals).

Furthermore, this Court has independently reviewed the record and concludes the strategic decision by petitioner's state appellate counsel not to include petitioner's insufficient evidence points in petitioner's petition for discretionary review was neither objectively unreasonable nor "prejudicial" within the meaning of *Strickland*.  The Waco Court of Appeals rejected petitioner's insufficient evidence points of error on the merits,

concluding that, when viewed in the light most favorable to the jury's verdict, there was ample evidence in the record showing both (1) petitioner exhibited or used a knife as a deadly weapon in the course of his aggravated assault on Mitchell and (2) Mitchell sustained serious bodily injury as a result of petitioner's blows to her face and body with his hands and elbows. *Gonzales v. State*, 191 S.W.3d at 751-53.  This Court's own review of the record from petitioner's trial finds both of those conclusions to have been eminently reasonable applications of the well-recognized *Jackson v. Virginia* standard.

There was ample evidence in the record establishing Mitchell's facial and head injuries were extremely serious in nature.  Mitchell suffered a blow-out fracture of her eye socket which necessitated a CAT scan to rule out possible brain injury, loss of consciousness, and extensive facial swelling and bruising which, at least temporarily, disfigured her in a grotesque manner.  It was likewise clear Mitchell had been cut with a knife which was fully capable of causing her death had it been employed properly.  Accordingly, it was eminently reasonable for petitioner's state appellate counsel to have chosen not to include petitioner's insufficient evidence points in petitioner's PDR.  Moreover, there is no reasonable likelihood the outcome of petitioner's PDR proceeding would have been different had

petitioner's state appellate counsel included those same two insufficient evidence points in petitioner's PDR.

    3.   <u>Conclusions</u>

    Petitioner possessed no federal constitutional right to the assistance of counsel in connection with his petition for discretionary review.  Even if petitioner had possessed such a right, the strategic decision by petitioner's state appellate counsel not to include petitioner's extremely weak insufficient evidence points in petitioner's petition for discretionary review was neither objectively unreasonable nor prejudicial within the meaning of *Strickland*.  The Texas Court of Criminal Appeals' rejection on the merits in the course of petitioner's state habeas corpus proceeding of petitioner's complaint regarding the performance of his state appellate counsel in connection with petitioner's PDR was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

## XI. **Excessive Sentence Cruel and Unusual Punishment**

A.   <u>The Claim</u>

    In his twelfth claim herein, petitioner argues the twenty year sentence and ten thousand dollar fine imposed by his

sentencing jury amount to cruel and unusual punishment because he was a first-time offender who was a good candidate for probation.

B.   State Court Disposition

Petitioner raised a similar argument as his twelfth ground for relief in his state habeas corpus application.[62]  Curiously, in his state habeas pleading, petitioner argued he had one prior conviction for marijuana possession.[63]  The state habeas trial court recommended summary dismissal of this claim on the basis that it could, and should, have been included as a part of petitioner's direct appeal.[64]  In an unpublished Order issued March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application based on the trial court's findings made without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

C.   AEDPA Review

    1.   Clearly Established Federal Law

"The concept of proportionality is central to the Eighth Amendment.  Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to the offense.'" *Graham v. Florida,* ___ U.S. ___, ___, 130 S.Ct. 2011, 2021, 176

---

[62] *State Habeas Transcript,* at p. 22.

[63] *Id.*

[64] *State Habeas Transcript,* at p. 66.

L.Ed.2d 825 (2010)(*quoting Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910)).

In reviewing challenges to term-of-years prison sentences, the federal courts consider all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive or disproportionate to the crime. *Graham v. Florida*, ___ U.S. at ___, 130 S.Ct. at 2021.  In conducting such analysis, courts must look to the gravity of the offense and the harshness of the penalty, compare the sentences imposed on other criminals in the same jurisdiction, and examine the sentences imposed for the same offense in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 3010-11, 77 L.Ed.2d 637 (1983).

Employing this test, the Supreme Court struck down as excessive and disproportionate the imposition of a term of life imprisonment without parole for a series of non-homicide offenses committed while the defendant was a juvenile. *Graham v. Florida*, ___ U.S. at ___, 130 S.Ct. at 2034.  The Supreme Court also struck down a life sentence without parole for a defendant's seventh non-violent felony. *Solem v. Helm*, 463 U.S. at 303, 103 S.Ct. at 3017.

However, the Supreme Court upheld a sentence of life without parole for possession of a large quantity of cocaine. *Harmelin v. Michigan*, 501 U.S. 957, 994-95, 111 S.Ct. 2680, 2701, 115 L.Ed.2d 836 (1991).  The Supreme Court rejected a challenge to a sentence

of twenty-five years to life for theft of a few golf clubs under a state recidivist statute's three-strikes sentencing scheme. *Ewing v. California*, 538 U.S. 11, 28-31, 123 S.Ct. 1179, 1189-90, 155 L.Ed.2d 108 (2003).  The Supreme Court upheld a similar sentence imposed on a defendant convicted on two counts of petty theft. *Lockyer v. Andrade*, 538 U.S. 63, 73-77, 123 S.Ct. 1166, 1173-75, 155 L.Ed.2d 144 (2003).  The Supreme Court also upheld a sentence of life imprisonment, albeit with eligibility for parole, for a Texas defendant convicted of his third felony theft offense involving the acquisition of a relatively small quantity of property, i.e., fraudulent use of a credit card to secure $80 worth of goods, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses. *Rummel v. Estelle*, 445 U.S. 263, 285, 100 S.Ct. 1133, 1145, 63 L.Ed.2d 382 (1980).  The Supreme Court also upheld a forty-year sentence for possession with intent to distribute and actual distribution of marijuana. *Hutto v. Davis*, 454 U.S. 370, 373-75, 102 S.Ct. 703, 705-06, 70 L.Ed.2d 556 (1982).

The Supreme Court has explained its approach in reviewing the constitutionality of sentences for a term of years as determining whether the term imposed is grossly disproportionate for a particular defendant's crime. *Graham v. Florida*, ___ U.S. at ___, 130 S.Ct. at 2022.

2.   Synthesis

Petitioner's twenty-year sentence was imposed for a painfully violent offense.  The undisputed medical evidence established the serious nature of Mitchell's injuries.[65] Mitchell testified petitioner beat her regularly through the four years they lived together.[66]  Furthermore, there was testimony from a pair of Waco police officers and photographs showing the facial bruising and other injuries Mitchell sustained at petitioner's hands before she fled from petitioner's vehicle in traffic on June 24, 2000 and flagged down an officer.[67]

At the punishment phase of trial, petitioner's former wife testified petitioner (1) struck her on many occasions, (2) on one occasion strangled her until she lost consciousness and feared for her life, (3) struck her about the eyes in December, 1997, (4) in February, 1998 again strangled her until she lost consciousness, and (5) when she awakened, petitioner forced her to disrobe and submit to him whipping her with a belt.[68]  A Waco police officer testified about the aggravated assault charge he

---

[65] S.F. Trial, Volume 4, testimony of Dr. Mark Norwid, at pp. 70-90.

[66] S.F. Trial, Volume 3, testimony of Jessica Mitchell, at pp. 47-51.

[67] S.F. Trial, Volume 4, testimony of Tracy Simonette, at pp. 104-07, 119-21; testimony of Tim Loudermilk, at pp. 147-52.

[68] S.F. Trial, Volume 5, testimony of Laura McCaig, at pp. 60-74.

filed against petitioner based on petitioner's attacks on
petitioner's spouse.[69]

In addition to the overwhelming evidence showing the violent
nature of petitioner's offense and the fact petitioner had a long
history of extremely violent conduct toward women, petitioner's
sentencing jury also had before it petitioner's punishment-phase
trial testimony, in which he continued to deny ever having struck
either his former wife or Mitchell.[70]  At no point during his
testimony at either phase of his trial did petitioner express
remorse or accept responsibility for his assaults on Mitchell.
The sentencing jury also heard extensive alibi testimony from
petitioner and his friends, which it ultimately rejected, as well
as the punishment phase testimony of several friends and
relatives of petitioner who denied petitioner was capable of
inflicting violence on another person.  Under such circumstances,
the sentencing jury was free to infer petitioner was a violent,
remorseless, unrepentant, abuser of women who had not only
committed perjury when he denied under oath striking Mitchell but
had also recruited others to participate in an unsuccessful
conspiracy to obstruct justice.

---

[69] S.F. Trial, Volume 5, testimony of Andrew Benson Perry,
at pp. 77-81.

[70] S.F. Trial, Volume 5, testimony of Charlie Gonzales, at
p. 107.

Petitioner has alleged no specific facts, much less furnished any evidence, showing his 20-year sentence is disproportionate to the sentences imposed throughout Texas, or to the sentences imposed in other jurisdictions, for similarly violent offenses committed by individuals with similar histories of violent abuse toward women who, like petitioner, abjectly refuse to accept any responsibility for their violent crimes. Petitioner likewise failed to present the state habeas court with any specific facts or evidence addressing these subjects.

Under such circumstances, petitioner has failed to demonstrate that his sentence was grossly disproportionate to his violent offense. *See Brooks v. Kelly*, 579 F.3d 521, 525 (5th Cir. 2009)(upholding a pair of sixty-year sentences for unlawfully selling prescription drugs where the state trial court found it unlikely the defendant, a large-scale narcotics dealer, could be rehabilitated or would stop drug sales voluntarily); *United States v. Harris*, 566 F.3d 422, 436 (5th Cir. 2009)(recognizing successful Eighth Amendment challenges to prison terms will be rare), *cert. denied*, ___ U.S. ___, 130 S.Ct. 1687, 176 L.Ed.2d 186 (2010); *United States v. Looney*, 532 F.3d 392, 396 (5th Cir. 2008)(upholding 548-month sentence for first-time drug offender in her fifties), *cert. denied*, ___ U.S. ___, 129 S.Ct. 513, 172 L.Ed.2d 376 (2008).

3.    Conclusions

        Petitioner has failed to establish that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.  The Texas Court of Criminal Appeals' rejection on the merits in the course of petitioner's state habeas corpus proceeding of petitioner's Eighth Amendment challenge to his sentence was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

**XII. Erroneous State Appellate Modification of Judgment**

A.    The Claim

        In his final ground for relief herein, petitioner argues the Waco Court of Appeals erred when it modified petitioner's judgment of conviction by vacating petitioner's conviction in state cause no. 2003-689-C.  More specifically, petitioner complains the Waco Court of Appeals chose to affirm the more serious offense and vacate the lesser offense.

B.    State Court Disposition

        Petitioner presented the same complaint as his thirteenth claim in his state habeas corpus proceeding.[71]  The state habeas trial court recommended summary dismissal of this claim on the

---

        [71] *State Habeas Transcript*, at p. 23.

basis that it could, and should, have been included as a part of petitioner's direct appeal.[72]  In an unpublished Order issued March 12, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application based on the trial court's findings made without a hearing. *Ex parte Charlie Julius Gonzales,* App. 68,394-01 (Tex. Crim. App. March 12, 2008).

C.    AEDPA Review

    1.    Clearly Established Federal Law

Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *See Estelle v. McGuire*, 502 U.S. at 67-68, 112 S.Ct. at 480 (holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102 (recognizing federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874 (holding a federal court may not issue the writ on the basis of a perceived error of state law).

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does *not* sit as a super-state appellate court. *Estelle v. McGuire*, 502 U.S. at

---

    [72] *State Habeas Transcript*, at p. 66.

67-68, 112 S.Ct. at 480; *Lewis v. Jeffers*, 497 U.S. at 780, 110
S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at
874.

> When a federal district court reviews a state
> prisoner's habeas petition pursuant to 28 U.S.C. § 2254
> it must decide whether the petitioner is "in custody in
> violation of the Constitution or laws or treaties of
> the United States."  The court does not review a
> judgment, but the lawfulness of the petitioner's
> custody *simpliciter*.

*Coleman v. Thompson*, 501 U.S. at 730, 111 S.Ct. at 2554.

Likewise, as explained above, in the context of a federal
habeas corpus proceeding, the harmless error standard focuses on
whether an alleged error had a substantial and injurious effect
or influence on the outcome of a petitioner's state criminal
proceeding. *See Brecht v. Abrahamson*, 507 U.S. at 637, 113 S.Ct.
at 1722 (holding the test for harmless error in a federal habeas
corpus action brought by a state prisoner is "whether the error
had substantial and injurious effect or influence in determining
the jury's verdict").

2.  Synthesis

It is not the proper role of this Court to determine whether
the state appellate courts correctly applied their own state
procedural rules when disposing of petitioner's direct appeal.
Assuming the Waco Court of Appeals erroneously applied applicable
state law when it chose to vacate one of the two aggravated
assault judgments the state trial court had entered against

86

petitioner, at best, any such error involved purely a misapplication of state law.  Petitioner does not identify any federal constitutional provision or principle which dictates precisely how a state appellate court is to ascertain which of a pair of state criminal judgments are to be vacated when a single jury verdict of guilty was returned and the state appellate courts subsequently determines the defendant was actually charged with multiple, separate and distinct, criminal offenses.

Moreover, any error arising from the state appellate court's vacation of petitioner's conviction in state cause no. 2003-689-C was harmless under the familiar *Brecht* standard.  Any error committed by the Waco Court of Appeals in vacating one of the two judgments against petitioner benefitted petitioner.

3.   Conclusions

The Texas Court of Criminal Appeals' rejection on the merits during the course of petitioner's state habeas corpus proceeding of petitioner's complaint about the manner in which the Waco Court of Appeals chose which judgment to vacate during petitioner's direct appeal was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

## XIII. **Certificate of Appealability**

The AEDPA converted the "certificate of probable cause" previously required as a prerequisite to an appeal from the denial of a petition for federal habeas corpus relief into a "Certificate of Appealability" ("CoA"). *See Hill v. Johnson*, 114 F.3d 78, 80 (5th Cir. 1997)(recognizing the "substantial showing" requirement for a CoA under the AEDPA is merely a change in nomenclature from the CPC standard); *Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997)(holding the standard for obtaining a CoA is the same as for a CPC). The CoA requirement supersedes the previous requirement for a certificate of probable cause to appeal for federal habeas corpus petitions filed after the effective date of the AEDPA. *Robison v. Johnson*, 151 F.3d 256, 259 n.2 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997), *cert. denied sub nom. Monroe v. Johnson*, 523 U.S. 1041 (1998).

Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the petitioner must obtain a CoA. *Miller-El v. Johnson*, 537 U.S. 322, 335-36, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); 28 U.S.C. §2253(c)(2). Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002)(holding a CoA is granted on an issue-by-issue basis,

88

thereby limiting appellate review to those issues); *Jones v. Cain*, 227 F.3d 228, 230 n.2 (5th Cir. 2000)(holding the same); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997)(holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted).  In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted alone. *Crutcher v. Cockrell*, 301 F.3d at 658 n.10; *Lackey v. Johnson*, 116 F.3d at 151; *Hill v. Johnson*, 114 F.3d at 80; *Muniz v. Johnson*, 114 F.3d at 45; *Murphy v. Johnson*, 110 F.3d 10, 11 n.1 (5th Cir. 1997); 28 U.S.C. §2253(c)(3).

A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S.Ct. 2562, 2569, 159 L.Ed.2d 384 (2004); *Miller-El v. Johnson*, 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel*, 529 U.S. 473, 483, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983).  To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard v. Dretke*, 542 U.S. at 282, 124 S.Ct. at 2569;

89

*Miller-El v. Johnson*, 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel*, 529 U.S. at 484, 120 S.Ct. at 1604; *Barefoot v. Estelle*, 463 U.S. at 893 n.4, 103 S.Ct. at 3394 n.4.  This Court is authorized to address the propriety of granting a CoA *sua sponte*. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim.  If this Court rejects a prisoner's constitutional claim on the merits, the petitioner must demonstrate reasonable jurists could find the court's assessment of the constitutional claim to be debatable or wrong. *Miller-El v. Johnson*, 537 U.S. at 338, 123 S.Ct. at 1040. *Accord Tennard v. Dretke*, 542 U.S. at 282, 124 S.Ct. at 2569.  In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> whether this Court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. at 484, 120 S.Ct. at 1604 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable

whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct).

While none of petitioner's claims herein satisfy the standard for obtaining federal habeas corpus relief under the AEDPA, several of his claims do warrant issuance of a Certificate of Appealability.  There is no basis for argument among reasonable jurists over this Court's conclusions regarding the lack of arguable merit contained in petitioner's fourth and sixth through thirteenth claims herein.  Most of those claims border on the legally frivolous.

Petitioner's complaints regarding his legally erroneous guilt-innocence phase jury charge and verdict form, and his trial counsel's failure to timely object thereto are less easily dismissed.  The state appellate courts eventually concluded petitioner had been charged with four, separate and distinct, aggravated assault offenses.  While the state habeas trial court concluded the status of Texas law with regard to the precise nature of the offense of aggravated assault was unclear in 2003 because there was a split between the intermediate Texas courts of appeal, reasonable jurists could conclude the Texas Court of Criminal Appeals' 2000 opinion in *Francis v. State*, as well as the Corpus Christi Court of Appeals' 2002 opinion in *Clear* should have alerted both the state trial judge and petitioner's trial

counsel to the existence of significant state legal authority mandating separate submissions of each of the four aggravated assault charges against petitioner.  Reasonable jurists could also conclude the fact the Fort Worth Court of Appeals' 2001 opinion in *Cole* suggested a different result should not have been sufficient to conclude a searching inquiry into the status of Texas on this issue as of 2003.  Petitioner is correct that, in the years immediately before and after petitioner's trial, Texas' intermediate appellate courts were far from consistent in their application of the state "egregious harm" standard in cases such as petitioner's.

Moreover, both parties herein cite the Fifth Circuit's opinion in *Hoover v. Johnson*, 103 F.3d 366 (5th Cir. 1999), to support their legal arguments herein.  This Court's independent review of the authorities cited by the *Hoover* court raise concerns involving the interpretation of *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), by the Hoover court.  *Richardson* appears to recognize a fundamental federal constitutional right to a unanimous jury verdict in the context of a continuing criminal enterprise prosecution: "the Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that definition risks serious unfairness and lacks support in history or tradition." *Richardson v. United*

*States*, 526 U.S. 813, 820, 119 S.Ct. 1707, 1711, 143 L.Ed.2d 985 (1999).

Given this Court's conclusions that the *Hoover* court's treatment of the jury unanimity issue is less than clear, and obvious differences between the continuing criminal enterprise statute involved in *Richardson* and the Texas aggravated assault statute involved in petitioner's case, this Court has refrained from invoking *Hoover* as a legal basis for resolving petitioner's jury unanimity claims herein.  In sum, reasonable minds could disagree over whether the state appellate court's conclusion of "no egregious harm" constitutes "harmless error" under the *Brecht* standard.  Likewise, reasonable minds could disagree over whether the failure of petitioner's trial counsel to timely object to the erroneous guilt-innocence phase jury charge and verdict form on aggravated assault was objectively reasonable.  There is no question petitioner's potential criminal liability was substantially reduced once the state trial judge erroneous chose to consolidate all four of the aggravated assault charges into a single disjunctive submission.  However, it is far from clear whether petitioner's trial counsel's decision not to object thereto was based on the clear benefit petitioner obtained from the consolidated submission or said counsel's misunderstanding of then-current Texas law.

For the foregoing reasons, petitioner is entitled to a CoA on his first three and fifth claims for relief herein, i.e., his complaint about the erroneous guilt-innocence phase jury charge and verdict form, and his trial counsel's failure to object thereto.

Accordingly, it is hereby **ORDERED** that:

1.   All federal habeas corpus relief requested in petitioner's federal habeas corpus petition, i.e., docket entry no. 1, is **DENIED**.

2.   All other pending motions are **DISMISSED** AS MOOT.

3.   Petitioner is **GRANTED** a Certificate of Appealability with regard to claims one, two, three, and five contained in petitioner's original federal habeas corpus petition herein (discussed in Sections III and V above); in all other respects, petitioner is **DENIED** a Certificate of Appealability.

4.   The Clerk shall prepare and enter a Judgment in conformity with this Memorandum Opinion and Order.

**SIGNED** on July 27, 2010.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

94